**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERA CONRAD, | ) Case No. CV 16-7987-JPR |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM DECISION AND ORDER** |
| v. | ) **AFFIRMING COMMISSIONER** |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social | ) |
| Security,[1] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision
denying her applications for Social Security disability insurance
benefits ("DIB") and supplemental security income benefits
("SSI").  The parties consented to the jurisdiction of the
undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The
matter is before the Court on the parties' Joint Stipulation,
filed August 21, 2017, which the Court has taken under submission
without oral argument.  For the reasons stated below, the

---

[1] Nancy A. Berryhill is substituted in as the correct
Defendant.

1  Commissioner's decision is affirmed.

2  **II.  BACKGROUND**

3      Plaintiff was born in 1966.  (Administrative Record ("AR")

4  274, 281.)  She completed high school and some college (AR 40)

5  and last worked as a cashier and caregiver (<u>id.</u>; <u>see also</u> AR

6  310).

7      On January 7, 2013, Plaintiff filed applications for DIB and

8  SSI, alleging that she had been disabled since July 27, 2011 (AR

9  274, 281), because of "[h]eart/lung disease," diabetes, high

10  blood pressure, depression, and "heart attack" (AR 309).  After

11  her applications were denied initially (AR 185) and upon

12  reconsideration (AR 193), she requested a hearing before an

13  Administrative Law Judge (AR 199-200).  A hearing was held on

14  August 18, 2015, at which Plaintiff, who was represented by a

15  nonattorney (AR 192),[2] testified, as did a vocational expert.

16  (AR 36-61.)  In a written decision issued September 16, 2015, the

17  ALJ found Plaintiff not disabled.  (AR 18-35.)  Plaintiff

18  requested review from the Appeals Council, and on August 25,

19  2016, it denied review.  (AR 1-6.)  This action followed.

20  **III. STANDARD OF REVIEW**

21      Under 42 U.S.C. § 405(g), a district court may review the

22  Commissioner's decision to deny benefits.  The ALJ's findings and

23  decision should be upheld if they are free of legal error and

24  supported by substantial evidence based on the record as a whole.

25

26
         [2] Although the transcript of the hearing indicates that
27  Plaintiff was represented by an attorney (AR 36), in fact her
    representative was a "non-attorney eligible for direct payment
28  under SSA law" (AR 192).

See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first

3

step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[3] to perform her past work; if so, she is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

4

has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 27, 2011, the alleged disability-onset date. (AR 21.) At step two, he concluded that she had the following severe impairments: "major depressive disorder associated with grief;[4] borderline intellectual functioning; diabetes; [and] congestive heart failure." (Id.) At step three, he found that she did not have an impairment or combination of impairments falling under a Listing. (AR 21-22.)

At step four, the ALJ found that Plaintiff had the RFC to perform modified light work:[5]

[She can] stand and/or walk for 6 hours in an 8-hour

_____

[4] Plaintiff's daughter apparently died in 2012 of an overdose. (AR 970.)

[5] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

workday and she can sit for 6 hours in an 8-hour workday;
she can occasionally climb, balance, stoop, kneel,
crouch, or crawl; the claimant can also understand and
remember tasks; she can sustain concentration and
persistence; she can socially interact with the general
public, co-workers, and supervisors; [and] she can adapt
to workplace changes frequently enough to perform
unskilled, low stress jobs that require simple
instructions.

(AR 22.)

Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as a "[c]ashier," DOT 211.467-030, 1991 WL 671853. (AR 27-28.) At step five, the ALJ alternatively determined that she could perform five "representative" jobs in the national economy: "[g]arment bagger," DOT 920.687-018, 1991 WL 687965, "[b]asket filler," DOT 529.687-010, 1991 WL 674737, "[a]ddresser," DOT 209.587-010, 1991 WL 671797, "[s]tuffer," DOT 731.685-014, 1991 WL 679811, and "[d]ocument preparer," DOT 249.587-018, 1991 WL 672349. (AR 28-29.) Thus, the ALJ found Plaintiff not disabled. (AR 29-30.)

**V.  DISCUSSION**

Plaintiff argues that the ALJ erred in (1) "changing a previous[ly] assessed significant limitation that was found by the previous ALJ" (J. Stip. at 5-7, 9-10), (2) finding that Plaintiff "can return to her past relevant work" (id. at 10-12, 13), and (3) evaluating the opinion of treating physician Zohngheng Tu (id. at 13-17, 21).  For the reasons discussed below, however, the ALJ did not err as to the first and third

contention, and any error in finding that Plaintiff could perform her past relevant work was harmless.

A. The ALJ Properly Assessed Plaintiff's RFC Given Changed Circumstances

Plaintiff contends that the ALJ "adopted the finding of the prior ALJ regarding [her RFC]" but that he erred because he actually determined a different RFC. (J. Stip. at 6 (citing AR 27).) Moreover, she argues, her age "shortly after" the ALJ's decision was "clearly a borderline situation" in which she should have been deemed "closely approaching advance[d] age," rendering her automatically disabled. (Id. at 6-7.)

1. Applicable law

When a previous ALJ has issued a "final decision" finding a claimant not disabled, an ALJ considering a subsequent claim regarding an unadjudicated period must "apply a presumption of continuing nondisability and determine that the claimant is not disabled" unless the claimant rebuts the presumption. SSAR 97-4(9), 1997 WL 742758, at *3 (Dec. 3, 1997); see also Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) ("The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings."). A claimant may rebut the presumption of nondisability by showing "changed circumstances" indicating a "greater disability." Chavez, 844 F.3d at 693; Lester, 81 F.3d at 827 (citing Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985)). Changed circumstances include increases in the severity of a claimant's impairment, changes in a claimant's age category, and new issues, "such as the existence of an impairment not

7

considered in the previous application." <u>Lester</u>, 81 F.3d at 827-828.

2.   <u>Relevant background</u>

On July 15, 2010, Plaintiff was found not disabled since January 13, 2005.[6]  (AR 105-22.)  She had the following severe impairments: "status post pericardial effusion in January 2004 with left mini thoracotomy in February 2004, history of coronary artery disease, cardiomegaly, obesity, hypertension, poorly controlled diabetes mellitus, [and] hernia and joint complaints." (AR 115.)  The ALJ at that time assessed her with an RFC for "sedentary work, that is, lift and carry 10 pounds occasionally and less than 10 pounds frequently, sitting 6/8 [hours]."  (AR 114-15.)  That decision became final when Plaintiff apparently did not appeal.

The ALJ here acknowledged the prior ALJ's decision and recognized that a rebuttable presumption of continuing nondisability existed under <u>Chavez</u> unless there was a showing of changed circumstances.  (AR 18.)  He found that "there ha[d] not been a showing of a changed circumstance" and stated that he "adopt[ed] the finding of the prior ALJ regarding the claimant's [RFC]."  (AR 27.)  Upon reviewing the medical record, however, he

_____

     [6] In a 2007 ALJ decision, Plaintiff was found disabled between January 11, 2004, and January 12, 2005, but not thereafter.  (AR 92-101.)  That decision was partially reversed by a district court, which affirmed the finding of a closed period of disability but remanded the case for reconsideration of the issue of later medical improvement, among others.  (<u>See</u> AR 105.)  Because Plaintiff had filed additional applications for DIB and SSI while the matter was before the district court on appeal, the 2010 ALJ addressed her claims in consolidation with the redetermination on remand.  (<u>Id.</u>)

assessed Plaintiff with different severe impairments (see AR 21
("major depressive disorder associated with grief; borderline
intellectual functioning; diabetes; [and] congestive heart
failure")) and an RFC for light work, subject to certain
exceptions (AR 22). He then found Plaintiff not disabled since
June 27, 2011. (AR 29.)

### 3. Analysis

As demonstrated by the ALJ's review of the record and RFC
determination, Plaintiff rebutted the presumption of continuing
nondisability by presenting changed circumstances, including such
new issues as depression and impaired intellectual functioning.
(See AR 21-27); Chavez, 844 F.3d at 693; Lester, 81 F.3d at 827.
The ALJ's misstatements otherwise (see AR 27) were harmless. See
Cha Yang v. Comm'r of Soc. Sec. Admin., 488 F. App'x 203, 204
(9th Cir. 2012) (finding that ALJ's misapplication of Chavez was
harmless because ALJ considered plaintiff's medical evidence in
formulating RFC). The ALJ did not in fact adopt the prior ALJ's
RFC determination; he independently reviewed medical evidence
from after the July 2010 decision and used that evidence in
determining Plaintiff's RFC after finding that she had
established new severe impairments. (See AR 24-27 (discussing
medical records from 2012 through 2015).) Accordingly, the ALJ
did not err by "changing a previous[ly] assessed significant
limitation that was found by the previous ALJ," as Plaintiff
alleges (J. Stip. at 5), because the prior decision was
appropriately afforded no weight. See Cha Yang, 488 F. App'x at
204; Gutierrez v. Colvin, No. CV 15-01584 FFM, 2016 WL 5402941,
at *5 (C.D. Cal. Sept. 26, 2016) (finding that Plaintiff

9

established changed circumstances and that ALJ's stated application of "continuing non-disability theory pursuant to Chavez" was harmless error because "ALJ went on to review and assess plaintiff's" medical records from after prior ALJ decision); McGlothen v. Colvin, No. 2:15-cv-204-GJS, 2015 WL 5706186, at *3 (C.D. Cal. Sept. 29, 2015) (finding that ALJ's "invocation of res judicata" was harmless error because "ALJ proceeded with a review of the medical evidence — a review that approximated the traditional five-step approach").

Plaintiff's additional contentions regarding her age category are factually flawed. Plaintiff argues that she was "closely approaching advance[d] age" "shortly after" the ALJ's decision and that hers was "clearly a borderline situation" in which the older-age category should apply. (J. Stip. at 6-7.) A person in the "closely approaching advanced age" category and with Plaintiff's high-school education, her past work, and a sedentary RFC (as was determined by the prior ALJ) would necessarily be found disabled under the grids, she alleges.[7] (See J. Stip. at 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2,

---

[7] The grids are medical-vocational guidelines that establish "the types and numbers of jobs that exist in the national economy." Heckler v. Campbell, 461 U.S. 458, 461 (1952); see also 20 C.F.R. pt. 404, subpt. P, app. 2 (1982). "They consist of a matrix of the four factors identified by Congress — physical ability, age, education, and work experience — and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." Heckler, 461 U.S. at 461-62. If "a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform," and "[i]f such work exists, the claimant is not considered disabled." Id. at 462.

R. 201.14).)  She notes that use of an older-age category may be
appropriate for a claimant who is "within a few days to a few
months of reaching [it]."  (J. Stip. at 6-7 (citing
§§ 404.1536(b), 416.963(b)).)

But Plaintiff was not assessed a sedentary RFC; she was
assessed an RFC for light work subject to certain exceptions.
(AR 22.)  Moreover, Plaintiff did not qualify for an older-age
category under § 404.1563 or § 416.963.  Plaintiff uses her date
last insured as the benchmark (see J. Stip. at 6, 9), but the
applicable date is that of the ALJ's decision.  See Lockwood v.
Comm'r Soc. Sec. Admin, 616 F.3d 1068, 1072-73 (9th Cir. 2010).
At that time, she was 49 years old and approximately eight months
from turning 50, the age at which she would qualify as "closely
approaching advanced age."  §§ 404.1563(d), 416.963(d).  Given
that eight-month gap, she was not "within a few days to a few
months" of the older-age category and hers was not a "borderline
situation."  See §§ 404.1563(b), 416.963(b); see also Lockwood,
616 F.3d at 1071-72 (no error considering plaintiff to be in
younger-age category despite her being one month shy of 55); cf.
Schiel v. Comm'r of Soc. Sec., 267 F. App'x 660, 660-61 (9th Cir.
2008) (error in not considering whether older-age category
applied when plaintiff was in "one-month proximity to 'person of
advanced age'" (citation omitted)).

Further, an ALJ is "not required to use an older age
category, even if the claimant is within a few days or a few
months of reaching" it.  Lockwood, 616 F.3d at 1071 (emphasis in
original).  An ALJ need only "consider whether to use the older
age category," which the ALJ may satisfactorily do by mentioning

11

the claimant's date of birth, determining an age category, citing the relevant regulations, and evaluating "the overall impact of all the factors" on the claimant's case. Id. at 1071-72 (emphasis in original). Here, the ALJ noted Plaintiff's birthday, determined that she was a "younger individual age 18-49," cited §§ 404.1563 and 416.963, and evaluated such factors as her education level, ability to communicate in English, and the transferability of her prior job skills. (See AR 28.) The ALJ therefore appropriately considered Plaintiff's age category and did not abuse his discretion by regarding her as a "younger" individual rather than a person "closely approaching advanced age." See Flash v. Colvin, No. 1:14-cv-01885-BAM, 2016 WL 1086886, at *6 (E.D. Cal. Mar. 21, 2016) (finding that ALJ properly considered plaintiff's age category when she was four months from turning 55 because ALJ noted her birthday, determined her age category at time of decision, cited relevant regulations, and relied on VE's testimony to find that there were jobs in national economy that plaintiff could perform).

Plaintiff does not argue that the RFC was erroneous in any other way. Thus, remand is unwarranted on this ground.

B. <u>The ALJ Improperly Found that Plaintiff Could Return to Past Relevant Work, but the Error Was Harmless</u>

The ALJ determined an RFC in which Plaintiff "had the limitation of needing low stress jobs that require simple instructions." (J. Stip. at 10; see also AR 22.) Plaintiff argues that the past relevant work as a cashier that the ALJ found she could do (AR 27-28) requires "reasoning level 3," which conflicts with her alleged "limitation to simple repetitive

tasks."[8]  (J. Stip. at 11.)  Thus, the ALJ erred, Plaintiff

explains, because his "decision lack[ed] logic and rationality."

(Id. at 10.)

### 1. Applicable law

At step four of the five-step disability analysis, a

claimant has the burden of proving that she cannot return to her

past relevant work, as both actually and generally performed in

the national economy.  §§ 404.1520(f), 416.920(f); Pinto v.

Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  Although the

burden of proof lies with the claimant at step four, the ALJ

still has a duty to make factual findings to support his

conclusion.  Pinto, 249 F.3d at 844.  In particular, the ALJ must

make "specific findings of fact" as to "the individual's

RFC," "the physical and mental demands of the past

job/occupation," and whether "the individual's RFC would permit a

return to his or her past job or occupation."  Ocequeda v.

---

[8] Without explanation, Plaintiff equates the assessed
limitation to "simple instructions" with a limitation to "simple,
repetitive tasks."  (See J. Stip. at 11.)  But the difference in
the two may affect what jobs are available to her based on
reasoning level.  Compare Zavalin v. Colvin, 778 F.3d 842, 847
(9th Cir. 2015) (finding that RFC limiting claimant to "simple,
repetitive tasks" conflicted with jobs with "Level 3 reasoning"
but not level-two reasoning), with Rounds v. Comm'r Soc. Sec.
Admin., 807 F.3d 996, 1003 (9th Cir. 2015) (as amended) (finding
that RFC limiting claimant to "one- and two-step tasks"
conflicted with jobs with "Level Two reasoning" but was
consistent with "Level One reasoning" jobs); see also Bowman v.
Colvin, 228 F. Supp. 3d 1121, 1141 (D. Or. 2017) (finding that
"Level Two [reasoning] allows for the performance of detailed but
simple instructions which are not complex").  Because Defendant
does not dispute Plaintiff's characterization, however, the Court
accepts her premise.  And in any event, any error was harmless
because the ALJ found jobs available at a reasoning level of one,
as discussed below, satisfying either a simple-instruction or
simple-repetitive-task limitation.

Colvin, 630 F. App'x 676, 677 (9th Cir. 2015) (citing SSR 82-62, 1982 WL 31386, at *4 (1982)); see Pinto, 249 F.3d at 844-45; SSR 82-62, 1982 WL 31386, at *2 (step four "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual can still do that work").

    To ascertain the requirements of occupations as generally performed in the national economy, the ALJ may rely on VE testimony or information from the DOT. SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) (at steps four and five, SSA relies "primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy" and "may also use VEs . . . at these steps to resolve complex vocational issues"); SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982) ("The [DOT] descriptions can be relied upon — for jobs that are listed in the DOT — to define the job as it is usually performed in the national economy." (emphasis in original)).

    When a VE provides evidence at step four or five about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that evidence and the DOT. See SSR 00-4p, 2000 WL 1898704, at *4; Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (holding that application of SSR 00-4p is mandatory). When such a conflict exists, the ALJ may accept VE testimony that contradicts the DOT only if the record contains "persuasive evidence to support the deviation." Pinto, 249 F.3d at 846 (citing Johnson v. Shalala, 60 F.3d 1428, 1435

(9th Cir. 1995)); see also Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (finding error when "ALJ did not identify what aspect of the VE's experience warranted deviation from the DOT").

2.  Relevant background

The ALJ determined an RFC for light work except that, among other things, Plaintiff could only "adapt to workplace changes frequently enough to perform unskilled, low stress jobs that require simple instructions." (AR 22.)

At Plaintiff's hearing, the ALJ asked the VE whether a person with Plaintiff's age, education, and RFC would be capable of performing jobs in the national economy. (AR 57-58.) The VE testified that such a person would be able to perform the jobs of "garment bagger" (of which there were 29,000 in the national economy) and "[b]asket filler" (48,000 in the national economy) as well as Plaintiff's past relevant work as a "cashier" (34,000 in the national economy). (AR 58-59.) When asked about a person with a sedentary-work RFC, the VE testified that the jobs of "[a]ddresser" (15,000 in the national economy), "[s]tuffer" (25,000 in the national economy), and "[d]ocument preparer" (400,000 in the national economy) would also be available. (AR 59.) The VE, responding to a question from the ALJ, stated that "all of those jobs" were "consistent with the DOT." (Id.)

3.  Analysis

As Defendant evidently concedes (see J. Stip. at 12), the ALJ erred in finding that Plaintiff could perform her past relevant work as a cashier because that job, which requires a reasoning level of three, see DOT 211.467-030, 1991 WL 671853,

15

conflicts with her restriction to work with simple instructions. See Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015) (holding that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"); accord Simpson v. Berryhill, __ F. App'x __, No. 16-55964, 2017 WL 5643198, at *2 (9th Cir. Nov. 24, 2017).  The ALJ's step-four error was harmless, however, in light of his alternative finding at step five.  See Tommasetti, 533 F.3d at 1042-43; Shaibi v. Berryhill, 870 F.3d 874, 883 n.6 (9th Cir. 2017).

The ALJ determined that Plaintiff could perform the jobs of garment bagger and basket filler (AR 28-29), both of which have reasoning levels of one, see 1991 WL 687965; 1991 WL 674737. Plaintiff's limitation to simple instructions does not conflict with level-one-reasoning jobs; thus, the ALJ properly found that she could find work in the national economy at her appropriate reasoning level, negating any error committed at step four.  See Lara v. Astrue, 305 F. App'x 324, 326 (9th Cir. 2008) (holding that limitation to "simple, repetitive tasks" does not conflict with "Reasoning Level 1 and 2 jobs"); see also Hernandez v. Berryhill, __ F. App'x __, No. 15-17028, 2017 WL 3888299, at *1 (9th Cir. Sept. 6, 2017) (finding that ALJ's failure to resolve conflict between simple-repetitive-task RFC and jobs requiring "Level 3 reasoning" was harmless because "[t]here was no apparent conflict between the ALJ's [RFC] determination" and identified job "requiring 'Level 2' reasoning"); Flash, 2016 WL 1086886, at *4-5 (finding that ALJ's error in not resolving conflict between RFC for "simple (SVP 1 and 2), routine and repetitive tasks" and

16

cashier job was harmless because ALJ "made an alternate finding at step five of the sequential evaluation that other jobs existed in the national economy that Plaintiff could perform," two of which "require[d] no more than Level 2 Reasoning").

Accordingly, remand is not warranted on this basis.

### C.   The ALJ Properly Rejected Dr. Tu's Opinion

The ALJ did not assign any weight to Dr. Tu's opinion and provided several reasons for doing so: (1) "Dr. Tu did not provide an explanation" for his opinion or "medically acceptable clinical or diagnostic findings to support [it]," (2) the opinion was "inconsistent with the claimant's admitted activities of daily living," and (3) the opinion was "inconsistent with the objective medical evidence as a whole." (AR 26.) Plaintiff challenges those reasons, arguing that foot swelling was "an acceptable clinical finding" supporting Dr. Tu's opinion, the ALJ "made no attempt in connecting what objective medical evidence was inconsistent with" his opinion, and "[n]one of the activities adduced under examination or otherwise reflected in the record would exceed the limitations assessed by Dr. Tu." (See J. Stip. at 15-16.) The ALJ did not err.

### 1.   Applicable law

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. Id.;

17

see §§ 404.1527(c)(1), 416.927(c)(1).[9]  This is so because
treating physicians are employed to cure and have a greater
opportunity to know and observe the claimant.  Smolen v. Chater,
80 F.3d 1273, 1285 (9th Cir. 1996).  But "the findings of a
nontreating, nonexamining physician can amount to substantial
evidence, so long as other evidence in the record supports those
findings."  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996)
(per curiam) (as amended).

The ALJ may disregard a physician's opinion regardless of
whether it is contradicted.  Magallanes v. Bowen, 881 F.2d 747,
751 (9th Cir. 1989); see Carmickle v. Comm'r, Soc. Sec. Admin.,
533 F.3d 1155, 1164 (9th Cir. 2008).  When a doctor's opinion is
not contradicted by other medical-opinion evidence, however, it
may be rejected only for "clear and convincing" reasons.
Magallanes, 881 F.2d at 751; Carmickle, 533 F.3d at 1164 (citing
Lester, 81 F.3d at 830-31).  When it is contradicted, the ALJ
must provide only "specific and legitimate reasons" for
discounting it.  Carmickle, 533 F.3d at 1164 (citing Lester, 81

---

[9] Social Security regulations regarding the evaluation of
opinion evidence were amended effective March 27, 2017.  When, as
here, the ALJ's decision is the final decision of the
Commissioner, the reviewing court generally applies the law in
effect at the time of the ALJ's decision.  See Lowry v. Astrue,
474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of
regulation in effect at time of ALJ's decision despite subsequent
amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647
(8th Cir. 2004) ("We apply the rules that were in effect at the
time the Commissioner's decision became final."); Spencer v.
Colvin, No. 3:15-CV-05925-DWC, 2016 WL 7046848, at *9 n.4 (W.D.
Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any
express authorization from Congress allowing the Commissioner to
engage in retroactive rulemaking.").  Accordingly, citations to
20 C.F.R. §§ 404.1527 and 416.927 are to the version in effect
from August 24, 2012, to March 26, 2017.

F.3d at 830-31). The weight given a treating or examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6). Those factors also determine the weight afforded the opinions of nonexamining physicians. §§ 404.1527(e), 416.927(e). The ALJ considers findings by state-agency medical consultants and experts as opinion evidence. <u>Id.</u>

Furthermore, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>accord</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ need not recite "magic words" to reject a physician's opinion or a portion of it; the court may draw "specific and legitimate inferences" from the ALJ's opinion. <u>Magallanes</u>, 881 F.2d at 755. "[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998)).

The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

## 2. Relevant background

On March 30, 2015, Dr. Tu completed a physical-RFC questionnaire regarding Plaintiff. (AR 966-69.) He indicated that she had the following diagnoses: diabetes mellitus, hypertension, and coronary artery disease "[status post] stent." (AR 966; see also J. Stip. at 13.) He stated that her symptoms were "foot swelling from prolonged sitting/standing," and he identified only "mild" foot swelling under the section for "clinical findings and objective signs." (AR 966.) Her prognosis, Dr. Tu found, was "fair" (id.), and her limitations applied to the period between November 1, 2012, to the date of the opinion (AR 969).

Dr. Tu assessed that Plaintiff was "[i]ncapable of even 'low stress' jobs" because they would "contribute to [hypertension] and heart dis[ease]." (AR 967.) She could walk "0" city blocks without rest or severe pain, sit for 10 minutes at a time, and stand for 15 minutes at a time. (Id.) She could also "sit and stand/walk" for "less than 2 hours" "total in an 8-hour working day," would need to take unscheduled breaks every hour during an eight-hour day, and would have to rest for 20 minutes before returning to work. (AR 967-68.) She did not, however, "need to include periods of walking around during an 8-hour working day," nor did she "need a job that permits shifting positions at will from sitting, standing or walking." (Id.) Further, she did not need a cane or other assistive device for standing or walking and did not need to elevate her legs during prolonged sitting. (AR 968.) Dr. Tu left two questions pertaining to pain blank. (AR 966-67.)

He assessed that Plaintiff could rarely lift and carry less than 10 pounds and could never lift and carry 10 pounds or more. (AR 968.) She could occasionally look down ("sustained flexion of neck"), turn her head right or left, look up, or hold her head in a static position. (Id.) She could occasionally twist and stoop (or bend) and rarely climb ladders or stairs. (Id.) She had no limitations with "reaching, handling or fingering" (id.) and had "no other" limitations than those described (AR 969).

As indicated on the March 2015 questionnaire (AR 966, 969), Plaintiff had first seen Dr. Tu a month earlier, on February 25 (see AR 1813-30). At that time, she complained of abdominal pain and pain around an unspecified scar-tissue area. (AR 1813.) Upon examination, she demonstrated tenderness in her abdominal region but was otherwise normal. (AR 1815.) Dr. Tu noted that she "exhibit[ed] no edema" in her musculoskeletal system, assessed her with abdominal pain, among other things, and ordered a CT scan of her abdomen. (Id.) The scan revealed a hernia that "could be a source of the patient's pain." (AR 1835.) Plaintiff saw Dr. Tu again on March 19, 2015, regarding her abdominal pain, which she seemed to indicate had "resolved." (AR 1856-70.) She demonstrated some tenderness in her abdominal region, however, but "no rebound" or "guarding." (AR 1857.) He assessed her with abdominal pain, an umbilical hernia, and "essential hypertension." (AR 1858.)

That day, Plaintiff was admitted to the hospital and her hernia was repaired. (AR 1056-57, 1065.) At intake, she was noted as having "acute" abdominal pain. (AR 1057.) Her extremities were "non-tender," had normal range of motion, and

presented with "no pedal edema." (Id.) Before she was discharged on March 24, 2015 (AR 1065), she had "trace edema" on March 21 (AR 1072) but "no significant edema" the next day (AR 1068).

Plaintiff saw Dr. Tu on March 30, 2015 (AR 1926-36), the same day he completed his questionnaire. Plaintiff complained only of abdominal discomfort and pneumonia. (AR 1926-27.) Upon examination, she demonstrated tenderness in her abdominal region but no rebound or guarding. (AR 1927.) She "exhibit[ed] no edema" and her gait was "normal." (Id.) He assessed her with abdominal pain and ordered an x-ray of her abdomen, which revealed a "left nephrolithiasis."[10] (AR 1929.)

Plaintiff saw Dr. Tu again in May 2015 to receive clearance for extracorporeal shockwave lithotripsy, a procedure used to treat kidney stones.[11] (AR 2025.) Dr. Tu cleared her for the procedure, noting that Plaintiff's "ambulation [was] limited due to neuropathy" but finding that she was otherwise normal and "exhibit[ed] no edema." (AR 2025-28.)

In June 2015, Plaintiff saw Dr. Tu for pain in her left leg and right thumb. (AR 2108-09.) He found that she was "[p]ositive for myalgias" in her musculoskeletal system but

---

[10] Nephrolithiasis is the medical term for kidney stones. See Kidney Stones, MedlinePlus, https://medlineplus.gov/kidneystones.html (last updated Nov. 7, 2017).

[11] ESWL uses shockwaves to break a kidney stone into small pieces that can more easily travel through a patient's urinary tract and pass from the body. See Extracorporeal Shock Wave Lithotripsy (ESWL) for Kidney Stones, WebMD, https://www.webmd.com/kidney-stones/extracorporeal-shock-wave-lithotripsy-eswl-for-kidney-stones (last updated Nov. 20, 2015).

"exhibit[ed] no edema" and was "[n]egative" for leg swelling.
(AR 2109-10.)  Other findings were normal, and Dr. Tu assessed
her with left-leg pain, right-thumb pain, and uncontrolled
diabetes mellitus.  (AR 2110.)  He ordered an x-ray of her right
hand, referred her to orthopedics, and prescribed her
hydrocodone-acetaminophen[12] and nortriptyline.[13]  (Id.)  The x-ray
revealed "[n]o significant abnormality."  (AR 2112.)

In July 2015, Plaintiff saw Dr. Tu to receive medical
clearance for a surgery "for kidney stones."  (AR 2428-29.)  Upon
examination, Plaintiff's findings were normal and she exhibited
no pain, tenderness, or edema.  (AR 2430-31.)  Dr. Tu noted that
she was at a "high risk for [myocardial infarction]"[14] but that
she agreed to proceed with the surgery.  (AR 2431.)

In March 2013, Plaintiff completed an adult function report.
(AR 324-32.)  She indicated that she could not "concentrat[e],"
"walk to[o] far," or "sleep at night"; she had "a lot of chest
pains" and "depression"; and she didn't "like to [be] around
people."  (AR 324.)  She reported that she "d[id] nothing much
most of the time" and "just stay[ed] in bed" (AR 325), and she
needed reminders to "dress better" and to take medicine (AR 326).

---

[12] Hyrdocodone combination products containing acetaminophen
are used to relieve moderate to severe pain.  See Hydrocodone
Combination Products, MedlinePlus, https://medlineplus.gov/
druginfo/meds/a601006.html (last updated Oct. 15, 2017).

[13] Nortriptyline is an antidepressant.  See Nortiptyline,
MedlinePlus, https://medlineplus.gov/druginfo/meds/a682620.html
(last updated Aug. 15, 2017).

[14] Although Plaintiff claimed at her hearing to have had
"about five" surgical procedures stemming from congestive heart
failure (AR 44), the ALJ and counsel could identify only one in
the medical records (AR 55-57).

She noted, however, that she took care of her grandson, though she did not "have much to do [because he was] old enough to take care of himself." (AR 325.) She also prepared her own meals daily, including "sandwiches, frozen dinners, [and] eat[ing] out," which would take her "half an hour" (AR 326); washed dishes, which would take an hour (id.); went out alone by walking, riding in a car, or using public transportation (AR 327); drove (id.); shopped in stores for groceries once a month (id.); could pay bills, count change, handle a savings account, and use a checkbook or money orders (id.); and spent time with others by phone "with a friend" or at "church" (AR 328). She also indicated that she did not "need to be reminded to go places" and did not "need someone to accompany" her. (Id.)

She stated that she had problems getting along with family, friends, neighbors, and others because she liked to "keep to [her]self" and did not "like to be around people." (AR 329.) She reported that she could not lift more than five pounds, walk far, or climb stairs "without getting out of breath or chest pains." (Id.) She could walk only "maybe 100 yards" and would need to "rest for about 5-10 minutes." (Id.)

Plaintiff completed an additional adult function report in July 2013. (AR 350-58.) She indicated that she was unable to work in part because she could not "walk to[o] long" or "sit without legs in pain." (AR 350.) She reported that she "s[at] in the house and watch[ed] T.V." "all day" (AR 351, 354), but she had no problems with personal care (AR 351); did not need reminders to take care of personal needs or grooming or to take medicine (AR 352); prepared her own meals daily, such as frozen

24

dinners and sandwiches, which would taken "about 10 min[utes]"
(id.); cleaned her house once a week, which could "take all day"
(id.); traveled to places by walking, riding in a car, or using
public transportation (AR 353); shopped in stores for food (id.);
could pay bills, count change, handle a savings account, and use
a checkbook or money orders (id.); and regularly went to church
(AR 354).

She indicated, however, that she had problems getting along
with family, friends, neighbors, and others because she got "mad
a lot" and would "snap at them." (AR 355.) She also reported
not being able to lift "about 5 [pounds]," "walk a few yards," or
"concentrat[e]." (Id.) She could walk "only a few yards" before
needing to rest and would have to rest for "about five minute[s]"
before she could resume walking. (Id.) She also indicated that
she could pay attention for "maybe 5-10 min[utes]" and that she
could not follow written or spoken instructions well because she
"ha[s] to[o] much on [her] mind at one time" and "ha[s] to [be]
told more than once." (Id.)

In a consultative examination conducted on May 21, 2015,
Plaintiff indicated that she needed help with doing household
chores and walking "but not with making meals, shopping, dressing
and bathing." (AR 971.) She also reported that she "use[d]
public transportation" and that she was "managing her own funds"
at the time. (Id.)

At her August 2015 hearing, she reported that she had help
with her chores. (AR 52.) She stated that her brother and a
friend helped "keep [her] house clean" and took her "grocery
shopping." (Id.) She claimed to have "a lot" of swelling in

25

both feet and said she had to elevate her legs when she sat down. (AR 42.)

3. <u>Analysis</u>

Dr. Tu's opinion was contradicted by the opinion of consulting internist John Sedgh (<u>see</u> AR 982-87; <u>see also</u> AR 988-93), which the ALJ gave "great weight" (AR 26-27). Plaintiff does not challenge that determination. (<u>See generally</u> J. Stip. at 13-17, 21.) Accordingly, the ALJ was required to provide only a specific and legitimate reason for rejecting Dr. Tu's opinion. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1164; <u>see also</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007). He gave several.

a. *Lack of supporting explanation*

The ALJ stated that "Dr. Tu did not provide an explanation for [his] assessment" but instead "primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment." (AR 26.) Moreover, he did not "provide medically acceptable clinical or diagnostic findings to support the functional assessment." (<u>Id.</u>) This reason was specific and legitimate. <u>See</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)); <u>Batson</u>, 359 F.3d at 1195; <u>Thomas</u>, 278 F.3d at 957.

An ALJ may discount the "opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Bayliss</u>, 427 F.3d at 1216. This is especially true when, as here, a doctor's opinion is captured in a check-off report that does "not contain any explanation of the bases of [his] conclusions." <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir. 1996). Dr. Tu's opinion, expressed through a questionnaire (<u>see</u>

AR 966-69), assessed several severe functional limitations on Plaintiff's ability to sit, stand, walk, lift, carry, and concentrate, among other activities, but failed to indicate how he had determined the limitations. See De Guzman v. Astrue, 343 F. App'x 201, 208-09 (9th Cir. 2009) (ALJ was "free to reject" doctor's check-off report that did not "indicate any measuring of effort or give[] a description" of how patient was evaluated (alteration in original)). This is especially significant given that Dr. Tu had seen Plaintiff only twice before rendering his opinion, for an abdominal condition that was shortly thereafter surgically repaired. See Merritt v. Colvin, 572 F. App'x 468, 470 (9th Cir. 2014) (ALJ properly rejected medical opinion because treatment records reflected subsequent "positive response to treatment"); Rolston v. Astrue, 298 F. App'x 661, 662 (9th Cir. 2008) (treating physician's opinion properly rejected when last visit with plaintiff "was before the date of medical improvement" (emphasis in original)). Rejecting his opinion for lack of supporting explanation, as the ALJ did, was therefore valid. See Rojas v. Colvin, No. ED CV 14-00940(SH), 2015 WL 72340, at *3 (C.D. Cal. Jan. 6, 2015) (upholding ALJ's rejection of treating physician's opinion because there "were no supportive clinical or diagnostic findings" and "no explanation of the bases of the opinion — the opinion was contained in a check-off report").

To the extent that Dr. Tu provided an explanation for his assessments by noting "mild foot swelling" (AR 966), as Plaintiff implies by arguing that it was "an acceptable clinical finding" (J. Stip. at 15) and pointing to a few instances in the record

where she was noted as having edema in her extremities (id. (citing AR 985, 1072, 1410, 2203)), substantial evidence does not support the finding. Moreover, the many functional limitations Dr. Tu assessed were "out of proportion to any finding within [his] treatment notes." De Guzman, 343 F. App'x at 208.

Of the at least six times that Plaintiff saw Dr. Tu, he never noted foot swelling but instead regularly found that she did not exhibit edema. (See, e.g., AR 1815 (Feb. 2015), 1927 (Mar. 2015), 2027 (May 2015), 2109-10 (June 2015), 2431 (July 2015).) Indeed, Dr. Tu's treatment notes indicated that Plaintiff saw him primarily for abdominal pain associated with a hernia and kidney stones. (See, e.g., AR 1813 (Feb. 2015 complaining of abdominal pain), 1926-27 (Mar. 2015 complaining of abdominal discomfort), 2025 (May 2015 seeking clearance for kidney-stone procedure), 2108-09 (June 2015 complaining of left-leg and right-thumb pain), 2428-29 (July 2015 seeking clearance for kidney-stone surgery).) Just before she received hernia and kidney-stone treatment, when she was presumably suffering much more serious symptoms, Dr. Tu completed his March 2015 opinion. (Compare AR 1856-70 (Dr. Tu's second visit with Plaintiff on Mar. 19, 2015), and AR 966-69 (Mar. 30, 2015 questionnaire by Dr. Tu), with AR 1056-57 (Plaintiff admitted to hospital for hernia repair on Mar. 19, 2015, after visit with Dr. Tu), AR 2025 (May 2015 clearance for ESWL kidney-stone treatment), and AR 2428-29 (July 2015 clearance for kidney-stone surgery).) Only once did Dr. Tu note that Plaintiff's ability to walk was limited, by neuropathy (AR 2025), and just over a month before making that observation he noted that her gait was "normal" (AR 1927) — the same day he

rendered his opinion that she could walk "0" blocks without rest or severe pain (AR 967). See Garcia v. Colvin, No. ED CV 14-531-AS, 2015 WL 7069291, at *6 (C.D. Cal. Nov. 12, 2015) (finding that ALJ properly rejected treating-source opinion that "was conclusory and not supported by objective medical evidence" because doctor "did not cite to any objective clinical or diagnostic findings to support his opinion" and "treatment notes" did not support it); Clay v. Astrue, No. CV 12-1881 RNB, 2013 WL 550494, at *3 (C.D. Cal. Feb. 11, 2013) ("[T]he ALJ noted that [treating physician's] conclusions were not adequately supported by clinical data and diagnostic findings, including [his] own treatment notes[.]").

Further, though the record demonstrates that other doctors at times noted "trace" edema in Plaintiff's feet (see AR 1410 (Aug. 2014), 1432 (same), 1072 (Mar. 2015), 1875 (same), 985 (May 2015), 2203 (July 2015), 2252 (same), 2255 (same)), she has more frequently been noted — by podiatrists, among other physicians — as demonstrating no edema since 2012 (see AR 496 (June 2012), 861 (Feb. 2013), 890 (Apr. 2013), 897 (May 2013 by podiatrist), 1099 (Nov. 2013), 1116 (same), 1119 (same), 1168 (Apr. 2014), 1289 (June 2014), 1301 (June 2014 by podiatrist), 1343 (June 2014), 1600 (Dec. 2014), 1815 (Feb. 2015), 1057 (Mar. 2015), 1068 (same), 1882 (same), 1927 (same), 2027 (May 2015), 2063 (same), 2110 (June 2015), 2131 (same), 2267 (July 2015), 2213 (same), 2431 (same)). The record therefore does not support Dr. Tu's apparent reliance on foot swelling to justify his functional assessments. See Ruckdashel v. Colvin, 672 F. App'x 745, 745-46 (9th Cir. 2017) (finding that ALJ "provided specific and

legitimate reasons, supported by substantial evidence, for
rejecting" treating physician's opinion, including that it was
"conclusory" and "contradicted by the objective medical
evidence").

Thus, the ALJ properly rejected Dr. Tu's opinion for the
specific and legitimate reason, supported by substantial evidence
in the record, that it lacked explanation and support from
clinical or diagnostic findings.

                    b.   *Inconsistency with daily activities*

The ALJ further discounted Dr. Tu's opinion because it was
"inconsistent with the claimant's admitted activities of daily
living." (AR 26.)  Those daily activities, as summarized by the
ALJ, indicated that Plaintiff could "watch television; maintain
her personal care; prepare her own meals; clean house; walk; use
public transportation; ride in a car; go out alone; drive; shop
in stores for food; manage her finances; and attend church." (AR
24 (citing AR 350-55).)  The ALJ also noted that Plaintiff
reported to a "consultative examiner that she could do household
chores and walk (but with assistance)" and "use public
transportation and manage her own funds." (Id. (citing AR 971).)

Inconsistency with daily activities is a specific and
legitimate reason for discounting a treating physician's opinion.
See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014); Morgan
v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600-02 (9th Cir.
1999); Fisher v. Astrue, 429 F. App'x 649, 652 (9th Cir. 2011).
Here, the ALJ correctly identified several of Plaintiff's daily
activities that were inconsistent with Dr. Tu's opinion.  Dr. Tu,
for example, found that Plaintiff could sit for only 10 minutes

30

at a time and less than two hours a day, stand for only 15 minutes at a time, and walk "0" city blocks without rest or severe pain. (AR 967.) But as the ALJ found, Plaintiff prepared her own meals daily, washed dishes, and cleaned her house once a week, and she apparently took care of her grandson.[15] (See AR 24; see also AR 325-26, 352.) She could also travel by walking, riding in a car, or using public transportation and did not need "someone to accompany" her; moreover, she could drive, shop in stores, and go to church. (See AR 24; see also AR 327, 353-54); Lor v. Berryhill, No. 1:15-cv-01923-EPG, 2017 WL 511864, at *6 (E.D. Cal. Feb. 7, 2017) (finding that such daily activities as watching television, cooking, taking walks, driving, visiting friends and family, and doing so independently were inconsistent with treating physician's assessment). Clearly, Plaintiff could walk more than "0" blocks and sit more than two hours a day, as Dr. Tu indicated. Indeed, Plaintiff herself said that she "s[at] in the house and watch[ed] T.V." "all day." (AR 351, 354.)

Though Plaintiff argues that "her brother" helped her "keep the house clean and [took] her grocery shopping," as specified at her hearing (J. Stip. at 16 (citing AR 52)), that detail alone does not explain the inconsistencies between her daily activities and Dr. Tu's opinion. Even if Plaintiff's hearing testimony indicated more severe symptoms, the ALJ found her allegations "less than fully credible," a finding unchallenged by Plaintiff.

---

[15] As of October 2014, Plaintiff also seems to have "care[d] for her newborn great niece." (AR 953.)

(AR 23.)[16]  Moreover, as noted by the ALJ, Plaintiff herself
reported to a consultative examiner that while she needed help
with household chores and walking, she did not need assistance
"making meals, shopping, dressing, and bathing," "use[d] public
transportation," and "manag[ed] her own funds."  (AR 971.)
Further, Dr. Tu himself found that Plaintiff did not need an
assistive device to walk.  (AR 968); see Hunt v. Colvin, 954 F.
Supp. 2d 1181, 1189-90 (W.D. Wash. 2013) (finding that ALJ's
rejection of treating-source opinion as inconsistent with daily
activities was properly supported by ALJ's citation to
plaintiff's self-reported activities and her report of "similar
tasks during a consultative examination").  In any event, because
the ALJ's decision was rational and supported by substantial
evidence in the record, the Court should not "second guess[]" his
determination.  Thomas, 278 F.3d at 959; see also Hunt, 954 F.
Supp. 2d at 1190 ("Though her testimony at the administrative
hearing indicated more severe symptoms, the ALJ was not
unreasonable in relying on other evidence of Plaintiff's self-
reported activities and in construing that evidence to be
inconsistent with [treating source] opinion." (citing Tackett v.
Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999))).

    Thus, the ALJ's identification of inconsistencies between
Plaintiff's daily activities and the highly restrictive
limitations in Dr. Tu's opinion constitutes an additional

---

[16] As one example, although Plaintiff claimed to have "a
lot" of foot swelling and said she needed to elevate her feet
when she sat (AR 42), Dr. Tu noted only "mild" swelling and
expressly found that she had no need to elevate her feet when
sitting (AR 966, 968).

specific and legitimate reason for rejecting it.

        c.   *Inconsistency with objective medical evidence*

Inconsistency with objective medical evidence is a specific and legitimate reason for discounting a treating physician's opinion. <u>Batson</u>, 359 F.3d at 1195; <u>Kohansby v. Berryhill</u>, 697 F. App'x 516, 517 (9th Cir. 2017) (citing <u>Tommasetti</u>, 533 F.3d at 1041)). The ALJ here stated that Dr. Tu's opinion was "inconsistent with the objective medical evidence as a whole" (AR 26) and described in detail her medical records (<u>see</u> AR 25 (citing AR 406, 585, 636, 1064, 1067, 2210)). The ALJ also assessed consulting internist Sedgh's opinion, in which Plaintiff was examined and diagnosed with hypertension, chest pain, diabetes, and congestive heart failure and found capable of performing "at the equivalence of the light exertional level." (AR 26-27; <u>see also</u> AR 982-87.) Dr. Sedgh's opinion was supported by substantial evidence in the record and contradicted the more restrictive functional assessment provided by Dr. Tu, and thus the ALJ correctly rejected Dr. Tu's opinion for the specific and legitimate reason that it was inconsistent with other objective medical evidence. <u>See</u> <u>Bailey v. Colvin</u>, 659 F. App'x 413, 415 (9th Cir. 2016).

Even assuming that the ALJ erred by not specifically identifying which aspects of Dr. Tu's opinion were inconsistent with which pieces of medical evidence, <u>see</u> <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988); <u>Weiskopf v. Berryhill</u>, 693 F. App'x 539, 541 (9th Cir. 2017), any such error was harmless because the ALJ provided other specific and legitimate reasons, lack of supporting explanation and inconsistency with daily

activities, for rejecting the opinion. See Howell v. Comm'r Soc. Sec. Admin., 349 F. App'x 181, 184 (9th Cir. 2009); DeBerry v. Comm'r of Soc. Sec. Admin., 352 F. App'x 173, 176 (9th Cir. 2009); Bartels v. Colvin, No. CV 15-5144 AFM, 2016 WL 768851, at *4 (C.D. Cal. Jan. 29, 2016).

The ALJ therefore properly rejected Dr. Tu's opinion for the specific and legitimate reason that it was inconsistent with the objective medical evidence of record, as well as for lack of supporting explanation and inconsistency with Plaintiff's daily activities, as discussed above.

## VI. CONCLUSION

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[17] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.

DATED: January 16, 2018

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[17] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."